UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEPHEN GRAY,<br><br>                Plaintiff,<br><br>     -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                Defendants. | Civil Action No: 07 Civ. 9790<br>(SHS)(DCF) |

[ADDITIONAL CAPTIONS APPEAR FOLLOWING SIGNATURE BLOCKS]

**GRAY PLAINTIFFS' MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR
MOTION FOR (1) CONSOLIDATION, (2) APPOINTMENT OF LEAD PLAINTIFFS
AND LEADERSHIP STRUCTURE, AND (3) ENTRY OF [PROPOSED] PRETRIAL
ORDER NO. 1, AND IN OPPOSITION TO THE MOTION OF PLAINTIFFS SHAUN
ROSE AND MARK GEROULO FOR THE APPOINTMENT OF INTERIM LEAD
PLAINTIFFS, CO-LEAD COUNSEL AND LIAISON COUNSEL**

Marian P. Rosner (MR-0410)
Robert C. Finkel (RF-2373)
Andrew E. Lencyk (AL-4329)
James Kelly-Kowlowitz (JK-9616)
**WOLF POPPER LLP**
845 Third Avenue
New York, New York 10022


Robert I. Harwood (RH-3286)
Daniella Quitt, Esq. (DQ-1963)
Samuel K. Rosen (SR-3287)
**HARWOOD FEFFER LLP**
488 Madison Avenue
New York, NY 10022

*Counsel for the Gray Plaintiffs and
Proposed Interim Co-Lead Counsel
for the Class*

Doc. 159466

<u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.   The Gray Plaintiffs Have A Far Greater Interest In The Outcome Of This
           Litigation Based On The Submissions Of The Competing Movants, And
           Should Be Appointed Lead Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.   The Gray Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel . . . . . . . . . 5

           1.   Counsel For The Rose Plaintiffs is Conflicted Since it is Already
                Prosecuting an Existing Major ERISA Litigation Against Citigroup . . . . 6

           2.   Schiffrin Has Just Settled Another ERISA Stock Drop Case Against
                Citigroup, for No Monetary Recovery for the Class, but Substantial
                Fees for Itself . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

           3.   Putting Pennsylvania and Hartford, CT Based Firms in Charge as Co-
                Lead Counsel Of This Litigation Against Citigroup Does Not Achieve
                Efficiencies for the Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

           4.   The Gray Plaintiffs' Counsel Have Already Undertaken Substantial
                Work in Investigating and Pursuing the Claims of the Class, in Contrast
                to Rose Plaintiffs' Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

           5.   The Gray Plaintiffs' Counsel Have Substantial Experience in Class
                Actions and Other Complex Litigation, and the Claims Asserted in This
                Case, Have the Requisite Resources to Prosecute This Action, and Have
                Knowledge of the Law Applicable in This Case . . . . . . . . . . . . . . . . . . . 14

           6.   The Gray Complaint is Based on Original Work, and the Gray Plaintiffs'
                Complaints are Highly Detailed and State all Relevant ERISA Claims . 19

           7.   The Fact That Gray Plaintiffs' Counsel Have the Support of the Vast
                Majority of Other Plaintiffs and Their Counsel, and Nobody Has
                Supported the Rose Plaintiffs, is a Factor to be Considered, and is
                Telling of Peer Counsel's Evaluation of the Expertise and Effectiveness
                of Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

TABLE OF AUTHORITIES

CASES

*Allen v. Stewart Title Guar. Co.,*
    2007 U.S. Dist. LEXIS 1897 (E.D. Pa. Jan. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bynum v. Gov't of the Dist. of Columbia,*
    384 F. Supp. 2d 342 (D.D.C. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Cardinal Health, Inc. ERISA Litig.,*
    225 F.R.D. 552 (S.D. Ohio 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

*In re CMS Energy ERISA Litig.,*
    312 F. Supp. 2d 898 (E.D. Mich. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Electronic Data Systems Corp. ERISA Litig,,*
    2005 U.S. Dist. LEXIS 17457 (E.D. Tex. June 30, 2005) . . . . . . . . . . . . . . . . . . . . . . . 15

*In re J.P. Morgan Chase Cash Balance Litig.,*
    242 F.R.D. 265 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Krim v. Pcorder.com, Inc.,*
    210 F.R.D. 581 (W.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kurczi v. Eli Lilly & Co.,*
    160 F.R.D. 667 (N.D. Ohio 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Langbecker v. Elec. Data Sys. Corp.,*
    476 F.3d 299 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Polaroid ERISA Litig.,*
    362 F. Supp. 2d 461 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Reliant Energy ERISA Litig.;*
    2006 U.S. Dist. LEXIS 3181 (S.D. Tex. Jan.18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . 15

*Vladimir v. Bioenvision,*
    2007 U.S. Dist. LEXIS 93470 (S.D.N.Y. Dec. 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . 5

*Weltz v. Lee,*
    199 F.R.D. 129 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

OTHER AUTHORITIES

*Manual for Complex Litigation* § 21.271 (4th ed. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES AND RULES

22 NYCRR § 1200.24(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Employee Retirement Income Security Act of 1974 ("ERISA") . . . . . . . . . . . . . . . . . . . . . passim

Fed R. Civ. P. 23, et. seq. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Private Securities Litigation Reform Act ("PSLRA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Plaintiffs Stephen Gray, Samier Tadros and James Bolla (collectively, the "Gray Plaintiffs"), respectfully submit this memorandum in further support of their motion for entry of [Proposed] Pretrial Order No.1 (a) consolidating the above-captioned actions arising under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§502(a)(2) and (3), and §§1132(a)(2) and (3); (b) appointing the Gray Plaintiffs as Interim Co-Lead Plaintiffs on behalf of a proposed class of participants and beneficiaries of the Citigroup 401(k) Plan and the Citibuilder 401(k) Plan for Puerto Rico (the "Class"); (c) appointing the firms of Wolf Popper LLP ("Wolf Popper") and Harwood Feffer LLP ("Harwood Feffer") as Interim Co-Lead Counsel, and in opposition to the competing motion of Plaintiffs Shaun Rose and Mark Geroulo ("Rose Plaintiffs") for the appointment of interim lead plaintiffs, co-lead counsel and liaison counsel.[1]

## I.    PRELIMINARY STATEMENT

Plaintiffs Gray and Bolla, both represented by Wolf Popper, and plaintiff Samier Tadros, represented by Harwood Feffer, have moved for consolidation of each of these related ERISA actions, and for appointment of the Gray Plaintiffs as interim co-lead plaintiffs, and their counsel, Wolf Popper and Harwood Feffer, as interim co-lead counsel. There is no dispute that these actions are appropriate for consolidation.[2] However, appointment of interim co-lead plaintiffs

---

[1] The Gray Plaintiffs filed their original motion on November 26, 2007. The Rose Plaintiffs filed their initial motion and opposition to the Gray Plaintiffs' motion on December 13, 2007, together with a supporting brief ("Rose Initial Br."), and, following this Court's December 20, 2007 order, filed a "superseding" motion and memorandum ("Rose Supers. Br."), dropping certain arguments with respect to the Gray Plaintiffs. Since the Gray Plaintiffs are uncertain whether the Rose Plaintiffs intend to drop these arguments or raise them on reply, we address certain of them herein.

[2] The Gray Plaintiffs take no issue with respect to that part of Defendants' Response to plaintiffs' consolidation motions (filed December 13, 2007, before the Rose Plaintiffs' motion, filed later that same day), stating that they agree that the ERISA cases should be consolidated before this Court. However, to the extent Defendants suggest – intentionally or not – that the ERISA cases should also be "consolidated"
Doc. 159466

and co-lead counsel is subject to competing motions.

As set forth in their Moving Brief (and unchallenged by any competing movant), the Gray

Plaintiffs have together lost over $275,000 in their retirement savings as a result of defendants'

alleged wrongdoing and breaches of fiduciary duty set forth in their respective complaints. *See*

Declaration of James Kelly-Kowlowitz, filed herewith ("Kelly-Kowlowitz Decl."), ¶ 4.

Accordingly, the Gray Plaintiffs are highly motivated to prosecute this case for the benefit of the

Class. No other competing movant appears to have suffered more than one-tenth of the Gray

Plaintiffs' losses.

Plaintiff Gray, after an approximately month-long, careful investigation of the facts

surrounding Citigroup Inc.'s ("Citigroup" or the "Company") investments that were part of the

subprime mortgage meltdown and their impact on the Company's retirement plans established

for the benefit of Citigroup employees, filed a 51-page complaint in this action on November 5,

2007, against the Company and related ERISA fiduciaries (collectively, "Defendants"), on behalf

of the Citigroup 401(k) Plan and the Citibuilder 401(k) Plan for Puerto Rico (collectively, the

"Plan"), seeking relief pursuant to sections 409 and 502(a)(2) and (3) of ERISA, 29 U.S.C.

§§1109 and 1132(a)(2) and (3). Beginning eight days later, ten more such actions were filed (to

date) in this District, alleging substantially the same facts and causes of actions as the *Gray*

complaint, against overlapping defendants.

---

with the securities and derivative cases before this Court, the Gray Plaintiffs disagree. In the context of
the remainder of Defendants' response, and the November 9 and 15 letters attached as exhibits thereto, in
which Defendants ask that the cases all be "assigned" to the same judge, we believe Defendants may
have meant in their Response to request that the ERISA, securities, and derivative cases all be assigned to
the same judge, and **coordinated**. We agree with that approach which is consistent with the approach of
the vast majority of courts having parallel securities, ERISA and derivative cases before them, including
*In re AIG ERISA Litigation*, Master File No. 04-CV-9387 (JES) (S.D.N.Y.), currently being litigated by
Gray Plaintiffs' counsel, Wolf Popper and Harwood Feffer, in this District.

The complaints filed by each Gray Plaintiff are detailed and comprehensive. Wolf Popper and Harwood Feffer are among the most established and experienced class action litigation firms in the country, with substantial experience in ERISA, breach of fiduciary duty and financial fraud litigation, relevant to this case. Each has separately and together recovered billions of dollars for aggrieved class members in similar cases. As shown in their Moving Brief and herein, Gray Plaintiffs' counsel satisfy all of the non-exclusive factors of Fed.R.Civ.P. 23(g)(1)(C)(i), as they have done the most work of any moving firms in investigating and advancing the claims in this litigation for the benefit of the Class to date; have the most skill and experience in class actions, other complex litigation and the type of claims asserted in this action; their knowledge of the applicable law is unquestioned; and they have more than the requisite resources to handle this litigation, having frequently handled larger and more complex class action litigations, even in the recent past. Moreover, significant to this case, they are free from any disabling conflicts, and are thus best able to fairly and adequately represent the interests of the Class of any competing movant. *See* Rule 23(g)(1)(C)(ii).

The Rose Plaintiffs' competing motion for appointment of lead plaintiff and lead counsel, is based on distortions concerning Gray Plaintiffs' counsel, as addressed below. Critically, however, Rose Plaintiffs' counsel fail to disclose that they are saddled with conflicts preventing them from serving as interim lead counsel in this case, because their counsel Schiffrin, Barroway Topaz & Kessler, LLP ("Schiffrin") is currently actively prosecuting, as a member of plaintiffs' counsels' "Executive Committee," a separate, non-related, ERISA class action against Citigroup, *In re Citigroup Pension Plan ERISA Litigation*, Master File 05 Civ. 5296 (SAS) (S.D.N.Y.). That case is a very substantial class action which, together with Citigroup's current massive

financial woes and uncertainties, threatens to limit the amount of assets available for the Class

herein, which will be competing for such assets with the class in the *In re Citigroup Pension*

*Plan ERISA Litigation.*

Moreover, Rose Plaintiffs' counsel (Schiffrin) only months ago settled another ERISA

class action against Citigroup, alleging a similar cause of action (based on breach of fiduciary

duty in promoting plan participants' investments in the Citigroup Common Stock Fund, while

failing to disclose financial problems at the Company), for no monetary benefit whatsoever for

the Class, but the right for counsel to apply for up to $1 million in legal fees for themselves.

Gray Plaintiffs' counsel are seasoned litigators, and the senior partners in charge of this

case have over thirty and thirty-five years experience, respectively, in litigating some of the most

complex class actions in this and other Districts, including numerous ERISA class actions as set

forth below. Their record and reputation are beyond question, and they are in no way conflicted

in this action. Moreover, they have done the most work in advancing the claims of the Class in

this litigation, and represent the movants with the largest financial interest in the outcome of this

litigation. For these reasons, among others, as set forth below, the Gray Plaintiffs should be

appointed interim co-lead plaintiffs, and their counsel should be appointed interim co-lead

counsel.

## II.    ARGUMENT

### A.    The Gray Plaintiffs Have A Far Greater Interest In The Outcome Of This Litigation Based On The Submissions Of The Competing Movants, And Should Be Appointed Lead Plaintiffs

The Gray Plaintiffs have collectively suffered losses of over $275,000 of their retirement

savings. *See* Gray Pl. Moving Br. 1. Plaintiffs Rose and Geroulo, in response to the Gray

Plaintiffs' statement of their losses, have not indicated what their claimed losses are.[3]  It must

therefore be assumed that their claimed losses are significantly less, since even the other

competing movant, plaintiff Goldstein, represented by Stull, Stull & Brody, set forth his claimed

losses, albeit one-tenth the size of the Gray Plaintiffs' claimed losses.  It is thus fair to say that

the Gray Plaintiffs have the greatest stake in this litigation, are therefore the most highly

motivated, and should be presumed to be the most adequate plaintiffs.  *See* Rule 23(g)(1)(B),

(C)(ii) (emphasizing counsel's ability to fairly and adequately represent the interests of the class);

*cf.* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (lead plaintiff appointment provisions of Private Securities

Litigation Reform Act ("PSLRA") providing for rebuttable presumption that most adequate

plaintiff is one with the largest financial stake in the litigation).[4]

**B.      The Gray Plaintiffs' Counsel Should Be Appointed Co-Lead Counsel**

The criteria of Rule 23(g)(1)(C)(i) have been set forth in the Gray Plaintiffs' Moving

Brief, pp. 5-8.  In addition, Rule 23(g)(1)(C)(ii) "invites the court to consider any other pertinent

factors."  As made clear by the Advisory Committee Notes to Rule 23(g), courts and

---

[3]The Rose Plaintiffs state only that their Plan accounts "suffered losses" as a result of Defendants' breaches. Rose Initial Br. 4; Rose Supers. Br. 4.

[4]Under the PSLRA, Congress has made a studied judgment that the plaintiffs that will best ensure fair and adequate representation of a class, including oversight of class counsel, are those with the largest losses and therefore the largest stake and motivation in the outcome of the litigation. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). Indeed, under the PSLRA, "So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements [which are preliminary inquiries at the lead plaintiff stage], he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Vladimir v. Bioenvision*, 07 Civ. 6416 (SHS) (AJP), 2007 U.S. Dist. LEXIS 93470, at 22-23 (S.D.N.Y. Dec. 21, 2007) (Peck, Magistrate Judge). Moreover, as case law has held, the adequacy requirement is satisfied where: 1) class counsel is qualified, experienced, and generally able to conduct the litigation; 2) class members' interests are not antagonistic to one another; and 3) the class plaintiff *has sufficient interest in the outcome of the case to ensure vigorous advocacy. Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001).

commentators, "[n]o single factor is dispositive in evaluating prospective class counsel."

*Manual for Complex Litigation* (4th ed. 2004) ("*Manual*"), § 21.271 (Criteria for Appointment);

*In re J.P. Morgan Chase Cash Balance Litig.*, 242 F.R.D. 265, 277 (S.D.N.Y. 2007) (citing §

21.271 of the *Manual* and holding "No single factor is dispositive"). *See also* Advisory

Committee Notes to Rule 23(g), 2003 Amendments, Paragraph 1(C) ("In evaluating prospective

class counsel, the court should weigh all pertinent factors. No single factor should necessarily be

determinative in a given case. For example, the resources counsel will commit to the case must

be appropriate to its needs, but the court should be careful not to limit consideration to lawyers

with the greatest resources."). Thus, the Advisory Committee Notes emphasize that courts

should avoid appointment of class counsel by means of a rote quantitative comparison of a single

factor, as urged by Rose Plaintiffs here, where other counsel may best serve the class' interests as

a whole, especially where such other counsel have been retained by the movants with the largest

financial interest in the litigation.

### 1. Counsel For The Rose Plaintiffs is Conflicted Since it is Already Prosecuting an Existing Major ERISA Litigation Against Citigroup

The *Manual for Complex Litigation* provides that, when appointing interim class counsel,

"[i]t is important for the judge to *ensure that counsel does not have a conflict with class*

*interests.*" *Id.*, §21.271 (Criteria for Appointment) (emphasis added). *See* Kelly-Kowlowitz

Decl., Ex. M (excepts of the *Manual*); *see also* Rule 23(g)(1)(B), (C)(ii) (emphasizing counsel's

ability to fairly and adequately represent the interests of the class). Rose Plaintiffs' counsel has

failed to disclose to the Court that Schiffrin is currently a member of an Executive Committee of

plaintiffs' counsel representing the class in a separate major ERISA class action lawsuit against

Citigroup alleging, *inter alia*, that Citigroup's cash balance pension plan violates ERISA's

minimum accrual standards, and unlawfully discriminates on the basis of age. *See In re*

*Citigroup Pension Plan ERISA Litigation*, Master File 05 Civ. 5296 (SAS)(S.D.N.Y.); *see also*

Kelly-Kowlowitz Decl., Ex. A (order appointing counsel in *In re Citigroup Pension Plan ERISA*

*Litigation* as outlined in plaintiffs' memorandum of law), and Ex. B (plaintiffs' memorandum of

law naming Schiffrin as a member of the executive committee).[5]  Such representation creates a

conflict of interest because, as stated in a case relied on by Rose Plaintiffs' counsel, "Counsel

cannot represent different classes of plaintiffs with conflicting claims who are seeking recovery

from a common pool of assets." *In re Cardinal Health, Inc. ERISA Litig.*, 225 F.R.D. 552, 557

(S.D. Ohio 2005) (cited in Rose Initial Br. 13, 14; Rose Supers. Br. 14-15).[6]

   The representation of plaintiff classes by the same law firm in separate lawsuits against

the same defendant raises potential conflicts of interest. *See Manual* §21.271, fn 855 (noting

"conflicts of interest and other abuses").  For instance, counsel for plaintiffs may tempted to

favor one case over the other if the potential for legal fees is greater in the favored case, or

defendants may seek to play off one case against the other for its own reasons. *See e.g., Krim v.*

*Pcorder.com, Inc.*, 210 F.R.D. 581, 590 (W.D. Tex. 2002)(in denying class certification, the

court found multiple problems with the representation of different classes against the same

---

[5]The case is active and ongoing. *See* Kelly-Kowlowitz Decl., ¶ 5, Ex. C.

[6]*See also Allen v. Stewart Title Guar. Co.*, 2007 U.S. Dist. LEXIS 1897, at *4-5 (E.D. Pa. Jan. 9, 2007) (refusing to appoint firm as interim class counsel because it already represented a class of plaintiffs in an action against the same defendant, holding that "multiple representation may result in competing interests between the two proposed classes, and as such, could create an appearance of conflict"); ABA Code of Professional Responsibility, Disciplinary Rule 5-105 and Ethical Considerations 5-14 (prohibiting counsel from representing different plaintiffs with conflicting claims against the same defendant because it creates "the appearance of divided loyalties of counsel"); New York Lawyer's Code of Professional Responsibility DR5-105, 22 NYCRR § 1200.24(b) ("A lawyer shall not continue multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the lawyer's representation of another client, or if it would be likely to involve the lawyer in representing differing interests...").

defendants, including the inability to fairly conduct settlement negotiations); *Kurczi v. Eli Lilly &*

*Co.*, 160 F.R.D. 667, 678-79 (N.D. Ohio 1995) (noting in these situations, the risk exists for

potential class members that counsel will trade off certain of their interests to serve the interests

of other clients); *cf. Manual* §21.61 (noting that "recurring potential abuses in class action

litigation" include "conducting a 'reverse auction,' in which a defendant selects among attorneys

for competing classes and negotiates an agreement with the attorneys who are willing to accept

the lowest class recovery (typically in exchange for generous attorney fees)." Kelly-Kowlowitz

Decl., Ex M.

Moreover, the *Citigroup Pension Plan ERISA Litigation* is no small class action.

Citigroup's pension plan has hundreds of thousands of participants and damages could be in the

billions of dollars. The recoveries obtained from companies in similar sized cash balance

pension plan cases have been extraordinary. For example, in a similar sized class action, alleging

similar claims against IBM, *Cooper v. The IBM Personal Pension Plan*, Civil No. 99-829 (S.D.

Ill. July 31, 2003), after the district court ruled in favor of IBM's employees, IBM partially

settled the case for $318 million, and agreed to pay an additional $1.4 billion depending on the

outcome of certain issues on appeal.[7] *See* Kelly-Kowlowitz Decl., Ex. D (order noting that if the

district court's ruling were upheld on appeal, IBM's liability pursuant to its settlement would be

$1,714,293,000). As a result of Citigroup's already strained financial condition, its already-

announced writeoffs of $8-$11 billion, with writeoffs of $18.7 billion for the fourth quarter 2007

as predicted by analyst firm Goldman, Sachs & Co. ("Goldman Sachs") on December 27, 2007,

and no discernable end in sight; the announcement on December 13, 2007 that Citigroup would

---

[7]IBM later won its appeal and the settlement was limited to $318 million.

add onto its balance sheet approximately $49 billion in assets from investment vehicles damaged by the credit market crisis (effectively acknowledging its obligations to them);[8] its liability with respect to the *In re Citigroup Pension Plan ERISA Litigation*; and the extraordinary amount of liability it faces as a result of the various civil litigations filed against the Company related to its subprime mortgage securitization business, the Class in this case may well end up competing for limited assets with Schiffrin's other ERISA class action against Citigroup.[9]  No such conflict (actual or potential) can be raised with respect to the Gray Plaintiffs or their counsel.

> **2.    Schiffrin Has Just Settled Another ERISA Stock Drop Case Against Citigroup, for No Monetary Recovery for the Class, but Substantial Fees for Itself**

Schiffrin's current motion for appointment as lead counsel would have it be lead or executive committee counsel in its <u>third</u> major ERISA case against Citigroup within the last few months.  While, as stated, Schiffrin's "cash balance" ERISA case against Citigroup is still pending, in or about April 2003, Schiffrin filed yet another ERISA case based on an identical theory as herein.  *In re Citigroup ERISA Litigation*, No. 03-CV-2932 (S.D.N.Y.).[10]  Schiffrin

---

[8]Goldman Sachs also raised cash concerns at Citigroup and predicted the Company would have to cut its dividend by 40% in 2008 to preserve capital. *See* Kelly-Kowlowitz Decl., Ex. N (Article reporting Goldman Sachs' analysis, and Citigroup's December 13, 2007, announcement).

[9]Citigroup is also being investigated by the SEC and may face potential regulatory action, civil and criminal, which could severely impair the Company.

[10]As Schffrin states in its Notice of Class Action Settlement in that case (Kelly-Kowlowitz Decl., Ex. E at 4):

> The Lawsuit alleges that Defendants breached their fiduciary duties and otherwise violated ERISA by making the Fund available as an investment option under the Plan and causing the Plan to purchase and hold units in the Fund at a time when, according to the Plaintiffs, Citigroup common stock was an unsuitable and imprudent investment for the Plan. Plaintiffs further allege that Defendants violated ERISA by misrepresenting to Plaintiffs and Plan participants the financial status of Citigroup and, consequently, the true value of Citigroup stock. Plaintiffs also allege that Citigroup and the individual

asserts that the results it achieved in that litigation were significant.  However, as reflected in the Notice of Class Action Settlement in that action, the settlement Schiffrin reached, in exchange for applying to the Court for legal fees of up to $1 million, provided for <u>no monetary recovery for the Class</u>.  Instead, the sum total of the result achieved by Schiffrin for the Class for its substantial fees was described in the Notice as follows:  "As part of the Settlement, Defendants have agreed to implement certain structural changes to the Plan and to maintain an investment education program for Plan participants and other Class members."  *See* Kelly-Kowlowitz Decl, Ex. E at 6.[11]  Schiffrin agreed to this non-cash settlement, in exchange for a substantial fee for itself, prior to any decision on a motion to dismiss.[12]

### 3. Putting Pennsylvania and Hartford, CT Based Firms in Charge as Co-Lead Counsel Of This Litigation Against Citigroup Does Not Achieve Efficiencies for the Class

Schiffrin is located in Radnor, PA, with no presence in New York.  The Schatz firm is located a three-hour drive away in Hartford, CT.  To overcome this impediment, Schiffrin and Schatz have been forced to retain a third firm, Dealy & Silberstein ("Dealy"), from New York, as their proposed local liaison counsel, imposing further inefficiencies on the Class, insofar as

---

defendants failed to monitor the committee defendants and to provide them with accurate information about Citigroup and Citigroup stock. Plaintiffs sought to recover from the Defendants losses incurred by the Plans and, indirectly, losses incurred by the Plan participants and their beneficiaries caused by Defendants' alleged conduct.

[11]Apparently this "prophylactic" relief was not very effective, since Schiffrin, in this action, is once again seeking redress on behalf of a similar class to cure the virtually identical problems said class suffered prior to the prophylactic relief for which Schiffrin settled.

[12]Schiffrin apparently filed another case under the federal securities laws against Citigroup for similar claims as later alleged in *In re Citigroup ERISA Litigation*, No. 03-CV-2932 (S.D.N.Y.), but apparently abandoned that case in favor of the ERISA action after being unsuccessful in getting appointed lead counsel in the securities case.  *See* Schiffrin's press release dated August 5, 2002, attached as Exhibit F to the Kelly-Kowlowitz Decl.

Doc. 159466                                         10

Dealy offers no additional benefit to the Class (as evident from the lack of attention paid to it in the Rose Plaintiffs' brief), beyond its being located in New York.[13]  In contrast, Wolf Popper and Harwood Feffer are both located in New York, with easy access to Defendants' headquarters, as well as the Court (a short subway ride away).

The cost of Schiffrin and Schatz's time and travel to the hearing on this motion alone will be significant.  Each Citigroup employee and third-party witness is expected to be in New York, as are its counsels' offices (such as have appeared to date).  One can only imagine the high cost and inefficiencies of Schiffrin and Schatz traveling to the numerous depositions, hearings and meetings expected to take place in New York in this vast litigation.  *See In re Tyco Int'l, Ltd. Sec. Litig.*, MDL No. 02-1335-B (D.N.H. Dec. 18, 2002) (Rose Plaintiffs' counsel's own authority, Ex. D. to Izard Decl.) (factor which helped "tip the balance" in favor of appointment of certain counsel in charge of the ERISA cases was "the advantage of proximity to both this court and the litigation's likely center of gravity in New York.").

### 4. The Gray Plaintiffs' Counsel Have Already Undertaken Substantial Work in Investigating and Pursuing the Claims of the Class, in Contrast to Rose Plaintiffs' Counsel

The first factor under Rule 23(g)(1)(C)(i), which focuses on the work counsel has done to advance the litigation, *see, e.g., Bynum v. Gov't of the Dist. of Columbia*, 384 F. Supp. 2d 342, 345 (D.D.C. 2005), strongly favors Gray Plaintiffs' counsel.  Gray Plaintiffs' counsel have unquestionably done far more work than other counsel in identifying, investigating and prosecuting the claims in this action.

---

[13] Adding a third law firm, without additional relevant experience, to a leadership structure, is contrary to the Rose Plaintiffs' own brief, which cites the *Manual for Complex Litigation* in underscoring that "[t]he most important factor [in selecting lead counsel] is 'achieving efficiency and economy without jeopardizing fairness to the parties.'" (Rose Initial Br. 5, Rose Supers. Br. 5, *citing Manual*, at §10.211.)

Wolf Popper has been at the forefront of the instant litigation since filing the first ERISA action, on November 5, 2007, a 51-page complaint, after an approximately month-long investigation, and has since dedicated substantial resources advancing its prosecution. Indeed, the firm's lead partner on the case, Marian Rosner, was interviewed by FOX News on November 6, 2007, in connection with the litigation, a week prior to Rose's filing of his complaint. *See* http://www.wolfpopper.com/ (containing link to interview). Wolf Popper's attorneys and staff (including a full time private investigator, two certified public accountants, and a financial analyst) have extensively investigated Citigroup's alleged wrongdoing, reviewed court actions and pleadings, as well as media and other reports, and communicated with Citigroup's general counsel regarding the preservation of documents. In addition, as is their standard practice in ERISA cases, the Gray Plaintiffs' counsel have: in mid-November, negotiated an agreement with Defendants' counsel for the production of plan-related documents, under ERISA §104(b), which they received from defendants in early December; sent defendants a letter requesting preservation of further documents; sent a FOIA request to the SEC, as well as one to the Department of Labor; and have communicated with a number of aggrieved plan participants, and conducted further factual research in preparation for drafting the consolidated complaint.[14] They also retained a financial/damages consultant, Financial Markets Analysis, LLC. Kelly-Kowlowitz Decl., ¶ 3. On the other hand, although the Rose Plaintiffs state that Rose filed his complaint eight days after

---

[14]While the Gray Plaintiffs do not contend being the first to file is a determinative factor in appointing lead counsel, it does give some indication of who has done original work and investigation of the claims in the case. Moreover, the Gray Plaintiffs' counsel had investigated potential ERISA claims against Citigroup for approximately a month prior to filing the *Gray* complaint. Gray's complaint was all original work, while Rose's counsel had over a week to review Gray's complaint prior to filing his 46-page complaint.

plaintiff Gray,[15] from that time on, Rose Plaintiffs' proposed interim counsel have, based on their submissions, done nothing to advance the case for the benefit of the Class, besides sending defendants a letter requesting plan-related documents under ERISA §104(b), which Gray counsel had already done two weeks earlier, and filing this motion, which benefits primarily their counsel.[16]

In stark contrast to the original work done by the Gray Plaintiffs' counsel, the *Rose* complaint tracks many of the allegations first articulated and identified in the *Gray* complaint.[17] *See* Kelly-Kowlowitz Ex. G (*Gray* complaint) and Ex. H (*Rose* complaint). Nor does plaintiff Geroulo merit any credit for "identifying" class claims. Geroulo's complaint was filed on November 20, 2007, 11 days after a securities class action, entitled *Hammerschlag v. Citigroup Inc.*, 07-10258 (RJS) (S.D.N.Y.), was filed.[18] *See* Kelly-Kowlowitz Decl., Ex. I (*Hammerschlag* complaint) and Ex. J (*Geroulo* complaint). Although Geroulo attempted to change language to

---

[15]Plaintiff Geroulo filed his complaint on November 20, 2007.

[16]Beyond this letter, the sum total of the claimed activity of the Rose Plaintiffs is "providing relevant information to [their counsel] and expressing a willingness to work closely with counsel," and retaining counsel. Rose Initial Br. 4.; Rose Supers Br. 5.

[17]For instance, ¶ 94 of the *Rose* complaint ("Citigroup's conduits are on the verge of collapsing, thus subjecting the Company to billions of dollars in liability as a result of investor lawsuits for causing the conduits to issue debt based on materially false and misleading statements"), comes from ¶ 58 of the *Gray* complaint, and ¶ 111 of the *Rose* complaint is copied *verbatim* from ¶ 90 of the *Gray* complaint. Perhaps most telling is ¶ 110 of the *Rose* complaint, which directly copies a portion of Gray's loss causation analysis. *See Gray* complaint ¶ 89. ¶ 104 in the Rose complaint was also copied from ¶ 74 in the Gray complaint. In fact, it does not appear that Rose has shown that it has identified a single claim that had not been already identified by the Gray Plaintiffs.

[18]The *Hammerschlag* complaint was also modeled after the *Gray* complaint, although it contains some different specific misleading statements and an expanded class period (compare ¶¶ 66-77 of the *Hammerschlag* complaint to ¶¶ 64-76 of the *Gray* complaint ). The Gray Plaintiffs have previously investigated, and are continuing to investigate, the additional specific misleading statements, including the expanded class period alleged in the *Hammerschlag* complaint, and, if warranted, would include any such additional meritorious allegations in an amended complaint.

have his allegations appear original from the *Gray* complaint, upon a review of both complaints,

it is clear that Geroulo's additional allegations were modeled after the allegations in

*Hammerschlag*, in addition to those already alleged in the *Gray* complaint.[19]

Thus, in contrast to the Gray Plaintiffs, the Rose Plaintiffs have not shown what they

have "done in investigating and identifying the particular case" and should not be afforded any

material credit under this factor. *See* Advisory Committee Notes to Rule 23(g), 2003 Amendments

(noting "no single factor should be dispositive in selecting class counsel in cases in which there

are multiple applicants. The fact that a given attorney filed the instant action, for example, might

not weigh heavily in the decision if that lawyer had not done significant work identifying or

investigating claims").

Accordingly, the Gray Plaintiffs' counsel are by far the preferred interim Class counsel

under this critical factor. *See* Rule 23(g)(1)(C)(i).

> **5.    The Gray Plaintiffs' Counsel Have Substantial Experience in Class Actions
> and Other Complex Litigation, and the Claims Asserted in This Case, Have
> the Requisite Resources to Prosecute This Action, and Have Knowledge of
> the Law Applicable in This Case**

The Gray Plaintiffs' counsel are more seasoned litigators than either Schiffrin or Schatz.

In addition to their current, successful roles in *In re AIG ERISA Litigation*, Master File No.

---

[19]For example, ¶¶ 58-65 of the *Geroulo* complaint, is modeled after ¶¶ 33-37 of the
*Hammerschlag* complaint. Geroulo's other claims, which the Rose Plaintiffs suggest the Gray Plaintiffs'
complaints lack, are also copied from the *Hammerschlag* complaint. Geroulo's claim that Citigroup
misrepresented the amount of credit risk it assumed through its sub-prime mortgage business (Geroulo
Complaint, ¶¶ 68-71) comes from ¶¶ 57-60 in the *Hammerschlag* complaint. Geroulo's claims that
Citigroup failed to disclose the nature, purpose, size, and activities of its SIVs obligations (Geroulo
Complaint, ¶¶ 72-73), and that it violated accounting rules because it failed to consolidate the financial
results or liabilities of its affiliated SIVs as required by GAAP (Geroulo Complaint, ¶ 74), comes from ¶¶
1, 79-80, and 100 in the *Hammerschlag* complaint, and his claims that Citigroup misrepresented the
valuation of its sub-prime mortgage assets (Geroulo Complaint, ¶¶ 75-77) come from ¶¶ 61-62 in the
*Hammerschlag* complaint.

04-CV-9387 (JES) (S.D.N.Y.), and *In Re Aon ERISA Litigation*, Master File No. 04-cv-6875

(CRN) (N.D. Ill.), Wolf Popper has been in existence for over 60 years and has over 40 years of

experience in litigating complex class actions.[20]  Schiffrin has existed only ten years, and its

small predecessor firm was only begun twenty years ago.[21]  Schatz, is also a relatively young

firm, founded in 1995, and, according to its website, currently employs only nine attorneys (four

of whom are listed on this motion).[22]  Moreover, insofar as the crux of this litigation will involve

breaches of fiduciary duty, and Citigroup's underlying financial and accounting fraud, Wolf

Popper has been renowned for decades, prior to Schiffrin's and Schatz's existence, for its

expertise in breach of fiduciary duty, and financial fraud cases.  *See* firm resume attached as Ex.

C to Rosner Decl.; *see also* Rule 23(g)(1)(C)(i) (consideration of "counsel's experience in

handling class actions, other complex litigation, and claims of the type asserted in the

litigation.").

---

[20]*See* firm resume attached as Ex. C to the Declaration of Marian P. Rosner ("Rosner Decl."), dated November 26, 2007, previously filed with the Court.

[21]Schffrin describes in its motion the experience of the partner who would be in charge of this case, Joseph H. Meltzer, who graduated Temple University Law School in 1997. *See* http://www.martindale.com/Joseph-H-Meltzer/1536171-lawyer.htm. With due respect, in contrast, Marian P. Rosner, the partner in charge of this case at Wolf Popper, has over thirty years experience in some of the largest and most complex class action litigations in history. *See* Rosner Decl., ¶ 1. Similarly, Robert I. Harwood of Harwood Feffer, has over thirty-five years experience in complex class action litigation. *See* Declaration of Robert I. Harwood, dated November 26, 2007, (previously filed with the Court) Ex. B at 3.

[22]See http://www.snlaw.net/firm-history.htm. Schatz may be in the cases it cites on pp.13-14 of the Rose Initial Br., but the results it achieved in those cases have not always been good. For example, Schatz cites *In re Electronic Data Systems Corp. ERISA Litig.*, No. 03-1512 (E.D. Tex.), but neglects to acknowledge that this case resulted in an aberrant opinion by the Fifth Circuit which is one of the worst ERISA opinions for plaintiffs in the country, and is contrary to the law in other Circuits. *Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299 (5th Cir. 2007). The district court also rejected a settlement proposed by Schatz in that case as de minimis. *In re Electronic Data Systems Corp. ERISA Litig.*, 2005 U.S. Dist. LEXIS 17457 (E.D. Tex. June 30, 2005). Furthermore, Schatz lost the *Reliant Energy* case on summary judgment, *In re Reliant Energy ERISA Litig.*; 2006 U.S. Dist. LEXIS 3181 (S.D. Tex. Jan.18, 2006).

As Wolf Popper, Harwood Feffer is also an acknowledged leaded in the field of complex litigation. In addition to the *AIG ERISA* Litigation, other ERISA actions in which Harwood Feffer has taken a leading role include *In re Royal Dutch/Shell Transport ERISA Litig.*, 04-CV-1398-JWB-SDW (D.N.J.). There, Harwood Feffer served as co-lead counsel in an ERISA breach of fiduciary duty class action. The more than $90 million settlement (representing approximately 78% of the class' claimed loss) is one of the largest recovered amounts obtained in an ERISA breach of fiduciary duty case. The settlement in that case also contained important provisions that required the corporate defendants to implement structural changes, including procedures regarding the monitoring and training of individuals appointed to be ERISA fiduciaries. At the settlement fairness hearing in August 2005, the Court remarked on the skill and efficiency of class counsel in the prosecution of the case, stating they were:

> highly experienced and highly skilled in matters of this kind. Moreover, in this case it showed. Those efforts were vigorous, imaginative and prompt in reaching the settlement of this matter with a minimal amount of discovery .... So both skill and efficiency were brought to the table here by counsel, no doubt about that.[23]

Kelly-Kowlowitz Decl., Ex. K at 38.

In *In re Federal National Mortgage Ass'n Sec., Deriv. and "ERISA" Litig.*, MDL 1668, Harwood Feffer, as sole lead counsel (where Schiffrin served in a subordinate capacity), successfully withstood a multi-faceted motion to dismiss the action. In *Graden v. Conexant Systems Inc.*, Case No. 3:05-CV-695-SRC-MAS (D.N.J.), Harwood Feffer was again sole lead counsel and by virtue of its argument before the Third Circuit, precedent was set in that Circuit that former employees who had cashed out of a plan had standing to sue on behalf of the plan. In *In re Conagra Foods, Inc. ERISA Litig.*, No. 8:05-CV-00348 (D. Neb.), Harwood Feffer

---

[23] In the *Royal Dutch* action, Schatz played a subordinate role to that of Harwood Feffer.

achieved a settlement for the class having a value exceeding $14 million.

Harwood Feffer has also served as co-lead counsel (with Schriffin) in *Brieger v. Tellabs Inc.*, No. 1:06-CV-1882 (N.D. Ill.), where it defeated a motion to dismiss and achieved class certification status. In addition, Harwood Feffer is co-lead counsel with Schiffrin in *In re Northwest Airlines Corp.*, No. 05-2566 (RHK/AJB), and *In re Diebold ERISA Litig.*, No. 5:06-cv-0170 (SEL). In *In re UnumProvident Corp. ERISA Benefits Denial Actions*, No. 1:03-CV-1000 (MDL Case No. 1:03-MD-1552) (E.D. Tenn.), as sole lead counsel, Harwood Feffer successfully obtained class action certification.

In addition to those actions, Harwood Feffer has served or currently serves as lead or co-lead counsel in: *In re Royal Ahold N.V. Securities & ERISA Litig.*, No. 1:03-MD-01539-CCB (D. Md.); *Peterson, et al. v. AT&T Corp.*, No: 99-CV-4982-JLL-RJH (D.N.J.); *Stansbery, Jr. v. Alliance Capital*, 03-CV-8282-PKC-MHD (S.D.N.Y.); *McKoy v. Bank of America Corp.*, 03-CV-8025-GBD (S.D.N.Y.); *Zarate v. Bank One Corp.*, 03-CV-7315 (N.D. Ill.); *Wangberger v. Janus Capital Group, Inc.*, 03-CV-2061 (D. Colo.); *Salvato v. Zale Corp.*, No. 3:06-CV-1124-D (N.D. Tx.); *Corbett v. Marsh & McLennan Companies, Inc.*, 03-CV-8893-LAK (S.D.N.Y.); *Flynn v. Strong Capital Management, Inc.*, 03-CV-1067-CNC (E.D. Wis.); *Walker v. Massachusetts Financial Services*, 03-CV-12629 (D. Mass.); and *Calderon v. Amvescap, PLC*, 03-CV-2604 (D. Colo.).

Further, the Rose Plaintiffs do not and cannot challenge the resources of Gray Plaintiffs' counsel who have both financed huge class action litigations. For example, Wolf Popper, only a few months ago, settled a large, complex class action against Motorola, Inc. for approximately $200 million, three business days before the beginning of trial, and has deployed both human and

electronic resources to review documents, take depositions and marshal evidence in cases with document productions of tens of millions of pages. Wolf Popper is currently handling a 70 million page document production in the *Tyco Securities Litigation*[24] which is now concluding discovery, as well as a production of approximately 20 million pages in the *AIG ERISA Litigation*, which documents are maintained electronically on a database managed by the firm's IT staff and paralegals. Harwood Feffer likewise has substantial resources and is fully participating in the *AIG ERISA* Litigation discovery. As set forth above, Harwood Feffer has taken a leading role among plaintiffs' firms in pursuing employee lawsuits and ERISA violations on behalf of participants and beneficiaries in employer-sponsored benefit plans, having served or currently serving as lead or co-lead counsel in dozens of ERISA class actions. In appointing Harwood Feffer to these lead positions, courts have, of necessity, recognized that the firm has sufficient resources to prosecute these actions.[25]

Finally, the Rose Plaintiffs' counsel do not and cannot challenge Gray Plaintiffs' knowledge of the applicable ERISA law. Indeed, Gray Plaintiffs' counsel Wolf Popper, along with Harwood Feffer, took the lead in briefing the extensive and comprehensive motions to

---

[24]Wolf Popper currently serves as lead counsel in *Rosemarie Stumpf v. Neil R. Garvey, et al. (In re Tycom Ltd. Securities Litigation)*, Docket No. 03-CV-1352 (D.N.H.), a federal securities class action on behalf of purchasers of Tycom Ltd. stock, against Tyco International Ltd., Tycom Ltd., and Dennis Kozlowski.

[25]*See* Advisory Committee Notes to Rule 23(g), 2003 Amendments, Paragraph (1)(C) (noting that no single factor should be determinative, Advisory Committee stated, "For example, the resources counsel will commit to the case must be appropriate to its needs, but the court should be careful not to limit consideration to lawyers with the greatest resources.").

Gray Plaintiffs are uncertain what to make of the Rose Plaintiffs' counsel's claim (Rose Initial Br. at 23-24) to having a bank of briefs such that they do not have to "reinvent the proverbial wheel." In our experience, relying on copying cookie-cutter briefs is not a sound litigation strategy.

dismiss by multiple parties in the *AIG ERISA* Litigation, addressing virtually every topical issue on a motion to dismiss in such litigation. Wolf Popper and Harwood Feffer prevailed on such motions *in toto*, and against one of the top defense firms in the country, Paul, Weiss, Rifkind, Wharton & Garrison LLP, which is also one of defendants' two main counsel in this litigation. Wolf Popper and Harwood Feffer are currently actively involved in deposition discovery in the *AIG ERISA* Litigation, and expect to achieve a substantial monetary recovery in that case.[26] Wolf Popper and Harwood Feffer have a very spirited, but cordial and highly professional relationship with Paul Weiss, and this mutual respect will serve the Class well here. *See Manual*, § 10.224 (one of factors court should consider is "the attorneys' ability to command the respect of their colleagues and work cooperatively with opposing counsel....").

### 6. The Gray Complaint is Based on Original Work, and the Gray Plaintiffs' Complaints are Highly Detailed and State all Relevant ERISA Claims

The Rose Plaintiffs' effort, in their Initial Brief, to play up minor differences in the allegations and claims of the various complaints as somehow indicating that they should be appointed counsel, is contrived and inapposite. First, the Rose Plaintiffs contradict their own contention that there are any meaningful differences by arguing elsewhere that the complaints should be consolidated because all the actions "are based on substantially the same facts and

---

[26]Schiffrin and Schatz are disingenuous in seeking to draw some distinction between "provisional counsel" and "interim counsel." In *AIG ERISA*, Wolf Popper sought appointment as co-lead counsel. Judge Sprizzo appointed Wolf Popper and Harwood Feffer as provisional co-lead counsel, along with two other firms, which appointment has precisely the same meaning and effect as "interim" counsel, as the excerpt from the record quoted by the Rose Plaintiffs clearly reflects. *See also* Izard Decl., dated December 12, 2007, Ex. J at ¶12 (court appointing counsel to prosecute the case until "after the determination of the class certification motion," including the drafting of a consolidated complaint, the briefing of any motion to dismiss, and any matters pertaining thereto). Wolf Popper and Harwood Feffer still lead the prosecution of that already well-advanced action and are obviously acting as what the Rose Plaintiffs and others may refer to as "interim" counsel.

contain similar causes of action against overlapping Defendants," and that the actions "are substantially similar in terms of their underlying factual and legal claims." Rose Initial Br. 1, 3.

Next, the Rose Plaintiffs misleadingly assert that "[m]any of the allegations filed by the Gray plaintiffs track, virtually verbatim, the allegations of the Rose and Geroulo Complaints." Rose Initial Br. 17. This misrepresentation alone casts doubt on Rose Plaintiffs' counsel. The *Gray* complaint was filed <u>well before</u> either of the Rose complaints. Thus, of necessity, it was the Rose Plaintiffs who copied the *Gray* complaint.

The minute differences between the various complaints that the Rose Plaintiffs seek to latch onto are makeweight, or distorted. First, the Rose Plaintiffs' suggestion that the Gray Plaintiffs (i) only allege misrepresentations made in a corporate capacity, and not in a fiduciary capacity, and (ii) do not allege the potential ERISA liability of defendants for Citigroup's public statements, including in SEC filings, is untrue. The Gray Plaintiffs have alleged that "the Defendants regularly communicated with employees, including Plan participants and beneficiaries, about Citigroup's financial performance, future financial and business prospects, and the attractiveness of Citigroup stock" (Gray complaint, ¶ 98[27]), and that "[e]mployees continually heard positive news about Citigroup's growth, were led to believe that Citigroup stock was a good investment, and that the Plans were prudently managed" (*id.* ¶ 99). The *Gray* complaint immediately thereafter ties such representations to Citigroup's public statements: "Moreover, Citigroup publicly repeated highly favorable operating results, artificially favorable revenue growth trends, and other positive financial indicators, which were later found to be false and misleading." (*Id.* ¶ 100). These are, in substance, the same allegations later made by the

---

[27]*See also* Bolla Complaint, ¶ 101-102.

20

Rose Plaintiffs.

The Rose Plaintiffs' suggestion that the Gray Plaintiffs allege that the Plan invested directly in Citigroup common stock is also false. Nowhere in the Gray Plaintiffs' complaints do they allege that the Plans invested "directly" in Citigroup common stock (notably, the Rose Plaintiffs do not provide any citation to these alleged inaccuracies). In fact, the Gray Plaintiffs specifically allege that one of the investment options in the Plan "included the Citigroup Common Stock Fund," and that "[a]ccording to the Citigroup 401(k) Plan's Form 11-K Annual Report of the Citigroup 401(k) Plan, as of December 31, 2006, approximately $4.13 billion of the plan's $12.92 billion of assets were invested in Citigroup common stock *through the Citigroup Common Stock Fund.*" Gray complaint, ¶¶ 25-26 (emphasis added); *see also* Bolla complaint, ¶¶ 25-26.

The Rose Plaintiffs also attack the adequacy of the parties the Gray Plaintiffs named in their complaint. However, the Rose Plaintiffs do not allege anything more than what was alleged by the Gray Plaintiffs. Nonetheless, the Rose Plaintiffs argue that the Gray Plaintiffs do not properly allege the status of the Sponsors for each of the plans comprising the Plan, do not allege that Citibank N.A. is liable as a trustee, and do not allege that the Administrative and Investment Committees may be liable for directing trustees of the Plan. Rose Initial Br. 18-19. Here again, the Rose Plaintiffs overreach. The fact that the Gray Plaintiffs may have alleged that Citigroup was the sponsor for both plans at issue in this action, when technically, Citibank N.A., one of Citigroup's wholly owned subsidiaries, was the sponsor of the Citibuilder 401(k) Plan for Puerto Rico, is of no consequence. The Gray Plaintiffs do not allege that Citibank N.A. is liable as a result of its status as a plan sponsor, because as the Rose Plaintiffs concede, although "it is

certainly appropriate to allege the identity of the Plan sponsor, it is not required in that a plan

sponsor is not a fiduciary as a result of its status but rather only if it engages in fiduciary

conduct." Rose Initial Br. 18, fn 17. However, the Gray Plaintiffs have specifically named

Citibank N.A. as a defendant in the caption of the *Bolla* complaint (which was filed before the

Rose Plaintiffs identified Citibank N.A. as a fiduciary) *and* in the body of the *Bolla* complaint.[28]

*See* Kelly-Kowlowitz Decl., Ex. L (*Bolla* complaint). The Gray Plaintiffs' determined to add

Citibank N.A. as a defendant because it was a trustee of the Citigroup 401(k) Plan and thus,

exercised authority or control respecting management or disposition of the Plan's assets. Further,

the Gray Plaintiffs broadly allege that "ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), makes

a person a fiduciary "to the extent . . . he exercises any discretionary authority or discretionary

control respecting management of such plan or exercises any authority or control respecting

management or disposition of its assets . . . or . . . has any discretionary authority or discretionary

responsibility in the administration of such plan." and that "*all of the Defendants* performed

fiduciary functions under this standard, and thereby also acted as fiduciaries under ERISA." *See*

*e.g.*, Bolla complaint, ¶ 29.[29] Therefore, the potential liability of Citibank N.A. as a trustee was

covered under the Gray Plaintiffs' broad allegations, as is Citigroup's Administrative and

---

[28]The electronic copy of the *Bolla* complaint available on PACER is clearly missing page 6 of the complaint, which apparently has caused the confusion.

[29]The Rose Plaintiffs also note that the initial *Tadros* complaint included "very summary allegations" related to investments by the Plans in funds managed by Citigroup's subsidiaries and/or affiliates. These allegations relate to claims filed in *Leber v. Citigroup, Inc.*, 07-cv-9329 (S.D.N.Y.)(SHS), alleging that defendants imprudently invested plan assets in such funds to gain substantial fees for Citigroup's subsidiaries and/or affiliates, when better performing mutual funds were available with lower fees. However, the Rose Plaintiffs ignore that Tadros filed an amended complaint on December 7, 2007 (six days prior to Rose Plaintiffs' initial motion) which no longer includes the claims alleged in *Leber*.

Investment Committees' liability for directing trustees of the Plan.[30]

Moreover, Plaintiff Gray has indeed alleged Citigroup's misconduct which the Rose Plaintiffs suggest he does not allege. In particular, Plaintiff Gray alleges, *inter alia*, that Citigroup did not properly reflect *risks* in its loan loss provisions (Gray complaint, ¶ 4(f)), that it failed to disclose contingent liabilities with respect to its off balance sheet structures (*id.* ¶ 4(a)), and that Citigroup operated without the internal controls required to adequately determine the (*value*) of its loan losses (*id.* ¶4(e)). Plaintiff Gray also alleges that Citigroup failed to provide him and the Class complete and accurate information with respect to Citigroup's loan loss exposure (*id.* ¶ 8). The more detailed allegations required in the *Hammerschlag* case under the heightened pleading standards of the federal securities laws, 15 U.S.C. § 78u-4(b), and copied by Geroulo, are not required in ERISA cases.[31]

> **7.    The Fact That Gray Plaintiffs' Counsel Have the Support of the Vast Majority of Other Plaintiffs and Their Counsel, and Nobody Has Supported the Rose Plaintiffs, is a Factor to be Considered, and is Telling of Peer Counsel's Evaluation of the Expertise and Effectiveness of Counsel**

The Rose Plaintiffs contend that the fact that the majority of other plaintiffs and their counsel in this litigation support the appointment of the Gray Plaintiffs' counsel as interim co-

---

[30]It is interesting to note that the Rose Plaintiffs claim that Rose's complaint is similarly detailed to Geroulo's complaint and that "[t]he Rose Complaint carefully delineates the fiduciary status of each Defendant", but Rose's complaint does not even name Citibank N.A. as a defendant, let alone specifically state that Citibank N.A. was a fiduciary because it was a trustee of the Citigroup 401(k) Plan. Rose Initial Br. at 19.

[31]*See, e.g., In re Polaroid ERISA Litig.*, 362 F. Supp. 2d 461, 470 (S.D.N.Y. 2005) ("an ERISA complaint need 'do little more than track the statutory definition' to establish a defendant's fiduciary status in compliance with Rule 8") (citation omitted); *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 909 (E.D. Mich. 2004) (heightened pleading not necessary in ERISA actions because plaintiffs "are asserting a breach of fiduciary duty, not an intent to deceive"); *Cardinal Health*, 225 F.R.D. at 556 (agreeing that a complaint filed by the Schatz firm, while not as detailed as others, sufficed under Rule 8(a)).

lead counsel in this litigation is "irrelevant." This is an unsurprising position by someone whom no one has supported, but it is too hasty a conclusion.[32] Rule 23(g)(1)(C)(ii), the Advisory Committee Notes thereto (Paragraph (1)(C)), and the *Manual*, § 21.272, all make clear that the court should consider "any" or "all" pertinent factors that may bear on counsel's ability to fairly and adequately represent a class. The support of the majority of the other plaintiffs and counsel in the case for the Gray Plaintiffs to serve as interim co-lead counsel is a very strong indicator, by highly experienced, qualified peer counsel, that, based on their experience in litigating with, and sometimes against, these firms, Gray Plaintiffs' counsel are the most qualified, experienced, capable and most effective counsel to serve as class counsel in this litigation, and are the counsel "best able to represent the [C]lass." Rule 23(g) (quoted in Rose Initial Br. 25).[33] At a minimum, this vote of confidence by plaintiffs' counsels' peers should convey significant weight.

## III.  CONCLUSION

For the foregoing reasons, the Gray Plaintiffs' motion for (i) consolidation of the above-captioned actions, (ii) appointment of the Gray Plaintiffs as Interim Co-Lead Plaintiffs on behalf

---

[32]Further, the basis of the Rose Plaintiffs' other protestations is not accurate. The Rose Plaintiffs state that Wolf Popper filed three complaints. In actuality, Wolf Popper filed a complaint on behalf of plaintiff Gray, and then filed another complaint on behalf of another large stakeholder in the Citigroup 401(k) plan, James Bolla. Wolf Popper filed a third complaint on behalf of another plaintiff, Stephan Fiorino, as liaison counsel for another counsel, Ann D. White Law Offices, PC, which is located in Pennsylvania, much like Schiffrin and Schatz utilized a third firm as its liaison counsel in New York.

[33]At least four plaintiffs have filed responses with the Court in support of the Gray Plaintiffs' motion. *See Rappold v. Citigroup Inc., et. al.*, 07-CV-10396(SHS)(DCF)(Docket #7); *Tranberg v. Citigroup, Inc., et. al.*, 07-CV-10341(SHS)(DCF)(Docket #11); *Fiorino v. Citigroup Inc., et. al.*, 07-CV-10458(SHS)(DCF)(Docket #28); *Steven v. Citigroup, Inc., et. al.*, 07-CV-11156(SHS)(DCF)(Docket #18).

of the proposed Class, and (iii) appointment of the firms of Wolf Popper and Harwood Feffer as

Interim Co-Lead Counsel, should be granted, and the competing motion of the Rose Plaintiffs for

their appointment of interim lead plaintiffs, co-lead counsel and liaison counsel, should be

denied.

Dated: New York, New York
      January 4, 2008

Respectfully submitted,

By: _____
Marian P. Rosner (MR-0410)
Robert C. Finkel (RF-2373)
Andrew E. Lencyk (AL-4329)
James Kelly-Kowlowitz (JK-9616)
WOLF POPPER LLP
845 Third Avenue
New York, New York 10022
Telephone: (212) 759-4600
Facsimile: (212) 486-2093

By: _____
Robert I. Harwood (RH-3286)
Daniella Quitt, Esq. (DQ-1963)
Samuel K. Rosen (SR-3287)
HARWOOD FEFFER LLP
488 Madison Avenue
New York, NY 10022
Telephone: (212)-935-7400
Facsimile: (212)753-3630

*Counsel for the Gray Plaintiffs and
Proposed Interim Co-Lead Counsel
for the Class*

Doc. 159466

25

| | |
|---|---|
| SHAUN ROSE,<br><br>                         Plaintiff,<br><br>        -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                       Defendants. | Civil Action No: 07 Civ. 10294 (DC) |
| MEREDITH TRANBERG,<br><br>                         Plaintiff,<br><br>        -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                       Defendants. | Civil Action No: 07 Civ. 10341 (SHS)(DCF) |
| ANTON K. RAPPOLD,<br><br>                         Plaintiff,<br><br>        -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                       Defendants. | Civil Action No: 07 Civ. 10396 (SHS)(DCF) |
| SAMIER TADROS,<br><br>                         Plaintiff,<br><br>        -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>                       Defendants. | Civil Action No: 07 Civ. 10442 (UA) |

| | |
|---|---|
| STEPHAN FIORINO,<br><br>                Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>              Defendants. | Civil Action No: 07 Civ. 10458<br>(SHS)(DCF) |
| JAMES BOLLA,<br><br>                Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>              Defendants. | Civil Action No: 07 Civ. 10461<br>(SHS)(DCF) |
| MARK GEROULO,<br><br>                Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>              Defendants. | Civil Action No: 07 Civ. 10472<br>(SHS)(DCF) |
| ALAN STEVENS,<br><br>                Plaintiff,<br><br>      -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>              Defendants. | Civil Action No: 07 Civ. 11156<br>(SHS)(DCF) |

Doc. 159466

| | |
|---|---|
| STEVEN GOLDSTEIN,<br><br>     Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>     Defendants. | Civil Action No: 07 Civ. 11158<br>(SHS)(DCF) |
| CHRIS SOUTHARD,<br><br>     Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>     Defendants. | Civil Action No: 07 Civ. 11164<br>(SHS)(DCF) |
| WILLIAM WOODWARD, *ET AL.*,<br><br>     Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>     Defendants. | Civil Action No: 07 Civ. 11207<br>(UA) |
| FRANCIA BRICK,<br><br>     Plaintiff,<br><br>  -against-<br><br>CITIGROUP INC., *ET AL.*,<br><br>     Defendants. | Civil Action No: 07 Civ. 11369<br>(UA) |

Doc. 159466